UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO.  01-008

KEVIN HUFF                                  SECTION  "N"

## ORDER AND REASONS

Before the Court is the petition of Kevin Huff ("Huff") for relief pursuant to 28 U.S.C. § 2255, wherein Huff alleges a variety of shortcomings which he contends constitute ineffective assistance of counsel for which relief should be granted.  The government has opposed Huff's petition.

## PROCEDURAL BACKGROUND

On January 11, 2001, Huff and his co-defendant, Byron Duffaut a/k/a Byron Duffaunt, were charged in a three count indictment with conspiracy to possess with intent to distribute and possession with intent to distribute more than 50 grams of cocaine base, or "crack," and approximately 250 grams of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(a)(1). After entering a not guilty plea, Huff filed a motion to suppress (Rec. Doc. No. 20) evidence found in his black Lincoln Continental automobile.  Huff argued that (1) the Lincoln Continental which Duffaut was driving on January 4, 2001, was stopped without probable cause; (2) even if the stop

1

was legal, Duffaut lacked the authority to consent to a search of it, as the vehicle was purportedly owned by Huff; (3) even if such consent could be given by Duffaut, the investigating officers exceeded the scope of that consent by opening an air bag compartment in the vehicle; (4) if such air bag compartment was properly and legally opened, Duffaut's consent did not extend to the air bag compartment; and (5) Huff's detention during the search of the Lincoln Continental was unreasonably long, considering that his initial stop was for a traffic violation.  On April 20, 2001, the District Court denied Huff's motion to suppress.  (Rec. Doc. No. 34)  A notice of intent to introduce evidence pursuant to Rule 404(b) of the Federal Rules of Evidence was filed by the government.  In it, the government set forth the following items:  (1) Huff's guilty plea to simple possession of crack cocaine on October 17, 1991; (2) Huff's detention and arrest on February 11, 1994, by the Slidell Police Department for constructive possession of crack cocaine; and (3) Huff's arrest by the New Orleans Police Department for possession of crack cocaine on May 18, 1999. Huff's counsel opposed the government's intent to introduce such 404(b) evidence, which opposition the District Court granted in part, as to the October 17, 1991 conviction and the 1994 arrest, but denied (allowing the admission of) the 1999 arrest for possession of crack cocaine.  (Rec. Doc. No. 30); *U.S. v. Duffaut,* 2001 WL 428379 (E.D. La. April 26, 2001).  Huff's trial was continued for the purpose of allowing his and his co-defendant's counsel additional opportunities to evaluate the evidence, including a videotape of the traffic stop.

Although Huff complained before trial that his retained counsel did not file a motion to suppress as quickly as Huff desired, had taken more time than he thought was necessary to obtain the tape of the traffic stop, and had "done nothing" other than file the motion to suppress, Huff failed

to specify what other action he thought should have been taken (or how he had been prejudiced), and did not request new counsel or renew his objections prior to or during trial.  (Rec. Doc. No. 42)  On May 3, 2001, the government filed a Bill of Information in an attempt to establish that Huff had been convicted on October 17, 1991, of possession of crack cocaine.  (Rec. Doc. No. 41)

The case proceeded to trial on May 7, 2001, and resulted in a guilty verdict on all counts against both defendants.  (Rec. Doc. No. 43)  Prior to his sentencing, Huff again complained about his representation, and the Court allowed counsel to withdraw.  New counsel from the Federal Public Defender's Office was appointed to represent Huff.  (Rec. Doc. No. 60)

Huff's new attorney filed 15 objections to the Presentence Investigation Report.  On September 26, 2001, the District Court held the hearing on Huff's objections to a sentence enhancement based on a prior conviction under 21 U.S.C. § 851(c).  (Rec. Doc. No. 75)  The District Court rejected Huff's objection to this enhancement and determined that he had three prior drug-related convictions.  Huff was sentenced on September 26, 2001, at which time the District Court overruled all of Huff's objections to the factual findings and to the guideline calculation reflected in the PSI report.  Finding the appropriate guideline range under the sentencing guidelines to be 262 to 327 months, the District Court sentenced Huff to concurrent 300 month terms of imprisonment on each of the three counts of the indictment.  (Rec. Doc. Nos. 72 and 75)

On appeal to the United States Fifth Circuit, Huff was appointed yet another attorney to represent him.  His appellate counsel raised the following issues on appeal:  (1) whether the district court erred in denying Huff's motion to suppress evidence seized from his vehicle because (i) Huff did not consent to a search of the Lincoln and Duffaut could not validly consent to a search of Huff's

vehicle when Huff, the owner of the vehicle, was being detained in another location; (ii) he and Duffaut were illegally detained beyond the circumstances which justified them being stopped by the officers; and (iii) Duffaut's consent to the search was coerced; (2) whether the district court erred in allowing the fact of Huff's 1999 arrest and the evidence surrounding that arrest to be admitted into evidence pursuant to Federal Rule of Evidence 404(b); (3) whether the district court improperly enhanced Huff's sentence by finding that he had a prior felony narcotics conviction under 21 U.S.C. §§ 841(b)(1)(A) and 851; and (4) whether the district court erred in denying a motion for a mistrial based upon statements made by government counsel during closing arguments.  The Fifth Circuit affirmed the convictions of both Huff and co-defendant Duffaut. *U.S. v. Duffaut,* 314 F.3d 203 (5th Cir. 2002).  In so doing, the Court rejected Huff's contention that the motion to suppress was improperly denied.

On March 19, 2004, Huff timely filed the instant petition.  Huff attempted to amend his petition on July 23, 2004.  The government responded.  On November 9, 2004, Huff represented to the Court that he was incarcerated in FCI Williamsburg, Salter, South Carolina, and did not have access to a law library the use of which he could prepare a traversal of the government's opposition to his petition.  (Rec. Doc. No. 116)  The Court stayed the matter until such situation could be resolved.  Ultimately, it was learned that, in fact, Huff's incarceration facility did indeed have a law library, and Huff was ordered to file his traversal, which he did on December 8, 2006.  (Rec. Doc. No. 126)

## LAW AND ANALYSIS

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (6th Amendment right to counsel is right to effective assistance of counsel).  In *Strickland v. Washington,* 466 U.S. 668 (1984),  the Supreme Court established a two-prong test to evaluate ineffective assistance claims.  To obtain reversal of a conviction under the *Strickland* standard, the defendant must prove that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding.  *See* 466 U.S. at 687-88; *Harris v. Day*, 226 F.3d 361, 364 (5th Cir. 2000) (judicial scrutiny of counsel's performance must be highly deferential, given "strong presumption" that counsel's conduct was reasonable professional conduct); *see also Williams v. Taylor*, 529 U.S. 362, 396-99 (2000).  A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other.  *See* 466 U.S. at 697; *see, e.g.*, *Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001) (court need not address *Strickland*'s performance prong because defendant could not show prejudice).  In deciding whether a counsel's performance was ineffective under *Strickland*, a court must consider the totality of the circumstances.  *See* 466 U.S. at 690 (court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of reasonable professionally competent assistance"); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[T]he right to effective assistance of counsel . . . may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial").

Under the performance prong of *Strickland*, there is a "strong presumption"[1] that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 668, 689 (1984).  Courts have declined to characterize counsel's performance as ineffective assistance when counsel acted according to the defendant's restrictions on strategy, *see, e.g.*, *Moore v. Johnson*, 194 F.3d 586, 606-07 (5th Cir. 1999) (counsel's purported failure to expend pretrial resources in an effort to unearth evidence that may have contradicted defendant's alibi defense was not ineffective assistance because defendant chose and insisted on alibi defense); when the defendant failed to provide counsel with complete and accurate information, *see, e.g.*, *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997) (counsel's failure to avoid eliciting damaging testimony from defense witness was not ineffective assistance because defendant did not inform counsel he molested daughter); or when counsel refused to "assist[] the client in presenting false evidence or otherwise violating the law." *Nix v. Whiteside*, 475 U.S. 157, 166, 171 (1986) (counsel provided effective assistance by preventing defendant from committing perjury).

Since prejudice is not presumed, the defendant must show that counsel's errors were prejudicial and deprived defendant of a "fair trial,  a trial whose  result is reliable."[2] *Strickland*, 466 U.S. at 687.  This burden generally is met by showing that the outcome of the proceeding would have

---

[1]In interpreting the prejudice prong, the Supreme Court has identified a narrow category of cases in which prejudice is presumed. *See Strickland*, 466 U.S. at 692 (1984). The presumption applies when there has been an "actual or constructive denial of the assistance of counsel altogether," when counsel is burdened by an actual conflict of interest, or when there are "various kinds of state interference with counsel's assistance." *See id; Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).   In these situations, prejudice is so likely to occur that a case-by-case inquiry is unnecessary.  The circumstances for presuming prejudice are not present herein. *See Strickland*, 466 U.S. at 692; *see also U.S. v. Cronic*, 466 U.S. 648, 658 (1984).

[2]Unlike the performance prong of the *Strickland* test, which is analyzed at the time of trial, the prejudice prong of the *Strickland* test is examined under the law at the time the ineffective assistance claim is evaluated. *See Lockhart v. Fretwell*, 506 U.S. 364, 367-68 (1993).

been different but for counsel's errors.  *See Williams v. Taylor*, 529 U.S. 362, 391-93 (2000). To prove prejudice, the defendant must establish a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 692. The Court has rejected the proposition that the defendant must prove more likely than not that the outcome would have been altered. *See id.; see also Woodford v. Viscotti*, 537 U.S. 19, 22-23 (2002).  However, in some cases, the court will inquire further to determine whether counsel's ineffective assistance "deprive[d] the defendant of a substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 414.

### 1.      Motion to Suppress

Huff contends that his counsel was ineffective for failing to investigate "dispatch records to present evidence of an unconstitutional detention when filing [his] motion to suppress illegally seized evidence." (Petition, p. 5)  He also contends that a motion to suppress should have been filed to exclude Rule 404(b) evidence, i.e., the 1999 drug arrest, arguing that the traffic stop for a violation of the open container law which led to his 1999 arrest was illegal.  Huff also contends that a motion to suppress should have been filed with regard to the Rule 404(b) evidence seized from his residence in conjunction with his arrest on drug charges in 1999, due to his alleged lack of consent to search the room.  These arguments are without merit.

The filing of pre-trial motions "falls squarely within the ambit of trial strategy." *Schwander v. Blackburn,* 750 F.2d 494, 500 (5th Cir. 1985).  Moreover, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *U.S. v. Green,* 882 F.2d 999, 1003

(5th Cir. 1989).  Counsel need not raise every meritorious claim, much less those with no conceivable merit.  *Id.; Ellis v. Lynaugh,* 873 F.2d 830 (5th Cir. 1989).

Of course, in this case, Huff's attorney indeed filed a motion to suppress, seeking exclusion of evidence seized from the Lincoln automobile.  (Rec. Doc. No. 21)  At issue were the length of his detention, and the alleged illegality of the stop and search.  The district court rejected Huff's position, the result of which was reviewed on direct appeal.  See *Duffaut,* 314 F.3d at 207-08.

As to the suppression of 404(b) evidence, Huff claims inconsistencies between the arresting officer's testimony at the preliminary hearing on the state court drug charge and his trial testimony before this Court.  The inconsistencies Huff claims involve whether the arresting officer saw a red star on a beer bottle, and precisely when Huff decided to "break away from the officer."  (Petition, p. 8)  Again, Huff's counsel filed a pre-trial objection to the introduction of this 404(b) evidence. (Rec. Doc. No. 26)  The Court agreed with Huff in excluding a 1991 drug conviction and a 1994 drug arrest.  (Rec. Doc. No. 40)  However, not only did the district court overrule Huff's objection to the introduction of evidence of the 1999 event, the Fifth Circuit also upheld that decision. *Duffaut,* 314 F.3d at 209-10.  The alleged inconsistencies in the arresting officer's testimony are quite insignificant in terms of the testimonial evidence adduced, and, if of any importance at all, would go to the weight, not the admissibility, of such evidence.  Huff cannot establish that, even had such inconsistencies been further highlighted, or had the officer testified one way as opposed to another, the outcome of the trial would have likely been different.  Thus, Huff cannot establish prejudice from the failure to raise a meritless argument.

Finally, Huff claims that a motion to suppress evidence seized from his residence in conjunction with his arrest on the 1999 drug charges should have been filed. Yet again, such an argument was made by motion, which was denied, and which decision was reviewed by the Fifth Circuit on direct appeal. See *Duffaut,* 314 F.3d at 211.

### 2. Failure to Object to Introduction of Rule 404(b) Evidence

Huff also alleges ineffectiveness of counsel in failing to object to the introduction of certain evidence, including that seized from the room where he resided when arrested in 1999 for possession of crack cocaine. Huff contends that the evidence seized was the product of an unconstitutional search and seizure. The Court reiterates that the decision as to whether to object to any given evidence is a matter of trial strategy subject to the strong presumption that counsel's conduct falls within the wide range of professional assistance, *U.S. v. Stedman,* 69 F.3d 737 (5th Cir. 1995), and consistent therewith, Huff's counsel indeed filed a pre-trial objection to the admission of all 404(b) evidence. (Rec. Doc. No. 26) With the exception of the 1999 event and physical evidence seized at that time, the motion was successful. The Court also reiterates that Huff's arguments were made before the 5th Circuit and were rejected.

In hindsight, Huff also contends that, had he known that the gun involved in his prior drug activities would be admitted as part of the 404(b) evidence, he would have plead guilty. He claims that his counsel was deficient in failing to seek exclusion of this evidence prior to trial and in failing to object to it at trial.

This evidence, too, was part of the pre-trial objection made by counsel, which objection is referenced hereinabove. As to Huff's claim that he would have otherwise plead guilty, the record

belies such belated assertion.  Huff steadfastly refused to plead guilty following the Court's pre-trial rulings, and indicated no intent whatsoever to plead guilty either immediately prior to the commencement of trial, or during trial, as he is allowed to do.

Claiming his attorney was ineffective for failing to object to the prosecution's questions about the contents of phone records seized from the room where he resided as inadmissible hearsay, Huff again fails to point out any prejudice.  The phone records are not hearsay under Federal Rule of Evidence 803(6), and the witness' reading from such a document, which was introduced into evidence, does not constitute an objectionable procedure.  Moreover, whether to object or not given the type of evidence and its previous admission is a matter of trial strategy, and counsel's decision one way or the other in this case does not fall outside of the permissible range of professional assistance.  Moreover, the Fifth Circuit has considered the overwhelming nature of the evidence of Huff's narcotics crimes, see *Duffaut,* 314 F.3d at 211, and rejected the Rule 403 exclusion argument on plain error review, particularly in light of the limiting instruction provided by the Court and the probative value *vel non* of the evidence.  *Duffaut,* 314 F.3d at 209-10.

### 3.    Failure to Object to Hearsay Evidence

Huff contends that his counsel failed to object to the admission of background evidence of the events leading up to his surveillance and arrest, specifically the tip by the confidential informant; the testimony of Deputy Marx concerning descriptive information about the Lincoln automobile and the reason police authorities were searching for it; and testimony regarding the contents of phone records seized from his residence (relating to some of the Rule 404(b) evidence introduced at trial). These claims are without merit.

10

In the first instance, Huff appears to be referring to the testimony of Deputy Robert Marx, wherein co-defendant Duffaut's attorney cross examined Marx about a tip he had received concerning the particular vehicle, as well as the location of drugs to be found in the air bag compartment.  The record reveals that there was no testimony whatsoever involving Huff's name (either first or last), or about Huff driving a Camaro as a back-up car.  Testimony regarding the information gleaned from such tip was not introduced by the government through any of its witnesses on direct examination, and was never offered for the truth of the matter asserted.  Rather, it was elicited through defense counsel's cross examination to establish the reason for the officer's actions.  See *U.S. v. Gonzalez,* 967 F.2d 1032 (5th Cir. 1992).  The election of Huff's counsel not to object also squarely falls within the wide range of professional judgment and assistance, no doubt exercised as it was because of the co-defendant's cross examination, which would, in most cases, be aligned with Huff's interests.

Moreover, Huff cannot establish the type of prejudice necessary under *Strickland*, as he can show neither reasonable probability of a different outcome at trial, nor refute the overwhelming evidence of his guilt established through the testimony of witnesses whose direct observations of Huff's conduct, and the properly admitted evidence of drugs, such that the government would not have met its burden of proving Huff's guilt beyond a reasonable doubt.

### 4.     Failure to Object During Closing Arguments

Huff alleges that his counsel should have objected to the remarks of co-defendant Duffaut's attorney during his closing argument, and also should have objected to two purported misstatements in the government's closing argument.

As to Duffaut's attorney, Huff alleges that counsel stated that "Kevin Huff is the drug dealer," after Huff's attorney already made his closing argument. It is well established that counsel's failure to object to closing remarks is not ineffective assistance "unless the remarks are so prejudicial as to render the trial fundamentally unfair." *Jones v. Estelle,* 632 F.2d 490 (5th Cir. 1980). To render the trial unfair, Duffaut's counsel would have to make arguments which were not reasonably based on the evidence introduced before the jury. In other words, if Duffaut's attorney made such an argument that Huff indeed was a "drug dealer" such argument, though disputed by Huff himself, is appropriate if reasonably based on the facts in evidence. Accordingly, an objection such as the one Huff contends should have been made would likely have been overruled, since whether or not Huff was a "drug dealer" raises the very issue which the jury was to decide, based upon the indictment filed against Huff. Such a statement, made in closing argument by either the government or co-defendant Duffaut, is not fundamentally unfair, considering that the evidence adduced was designed to demonstrate to the jury that such was, in fact, the case. The failure to object does not rise to the level of a *Strickland* violation.

Huff contends that the government's purported misstatements as to whether Duffaut stated that Huff paid Duffaut to drive Huff to a casino, and as to a reference to Duffaut's statement that he had been paid to transport drugs from Houston, were objectionable. Again, however, the failure to object to such remarks is not necessarily ineffective assistance. Huff fails to demonstrate how these two purported misstatements, both attributed to co-defendant Duffaut, turned this case against him and satisfied the government's burden of proof that otherwise would have fallen short. In fact, a similar claim of improper argument by counsel was unsuccessful, according to the Fifth Circuit,

12

considering the strong weight of the evidence against Huff and Duffaut.  See *Duffaut,* 314 F.3d at 210-11.

### 5.    Failure to Conduct Cross Examination

Huff proposes that a particular line of cross examination questions could have been offered concerning whether he knew the identity of the driver of the Lincoln automobile.  Of course, the decision on whether and how to conduct cross examination, including specifically which questions or lines of questions to propound, is strategic in nature and is within the sound discretion of counsel, and generally will not support an ineffective assistance claim.  See *Dunham v. Travis,* 313 F.3d 724 (2nd Cir. 2002).  Undoubtedly, counsel factors in the universe of possible answers from a witness before propounding certain questions, with a consideration that such answers might compromise the defense in a fashion resulting in harm to the defense.  Huff does not indicate what possible good for his defense could have come out of such questioning in order to establish *Strickland* prejudice.

### 6.    Impeachment of Witnesses

Huff next contends that his counsel was ineffective for failing to impeach Officer Hajek with regard to the 404(b) testimony, and failing to impeach the testimony of Agent Covell with an allegedly prior inconsistent statement.  Of course, the impeachment of a witness, and the extent to which such witness can be impeached, is a strategic choice well within the broad discretion of trial counsel.  See *Dunham*, 313 F.3d at 732.  The record reveals that Huff's attorney thoroughly cross examined Officer Hajek at trial, including some very specific testimony such as the aforementioned star on the beer bottle, and the extent of the lighting.  Even if Huff's attorney failed to secure the preliminary hearing transcript of Hajek's prior testimony, Huff cannot establish prejudice:  the

13

alleged inconsistencies he cites are of such a minor nature as to be insignificant, when considering the other overwhelming evidence, as found by the Fifth Circuit.

According to Huff, Agent Covell testified at trial that he met Duffaut in the front of the residence, instead of in the front yard. Huff believes that his attorney should have impeached Agent Covell with his contention that the residence at 2143 Pauger Street does not have a front yard, which would have led to the discrediting of Covell's testimony before the jury. However, Huff neither provides the previous inconsistent statement by Agent Covell,[3] nor reasonably argues that the difference between the front of the residence and the front yard would have created such doubt in the jurors' minds such that Covell's testimony would have been completely discredited. Huff cannot establish the deficiency of counsel pursuant to *Strickland* under these circumstances.

**7.      Failure to Obtain Fingerprints**

Asserting that his counsel could and should have had a plastic gray bag fingerprinted, Huff contends that an exculpatory fact would have been available: the absence of his fingerprints. The gray bag, which Huff was seen carrying from the Camaro to the Lincoln, was later found inside the Lincoln automobile, and contained drugs. Unfortunately for Huff, the lack of fingerprints on the bag, even if such result was obtained from testing, would not have created a reasonable probability of a  change in the outcome of the trial. Although the presence of his fingerprints would most assuredly inculpate him in the crime, the purported lack of fingerprints would be meaningless, especially in light of eyewitness testimony of those who observed Huff placing the very same bag

---

[3]In its opposition, the government states that the criminal complaint to which Huff apparently refers in his petition at p. 55 was actually sworn by another affiant, Darryl W. Lyons.

in the Lincoln automobile.   Thus, no reasonably probable outcome-changing factor can be considered with regard to whether the gray bag was fingerprinted.

### 8.        Investigating and Interviewing Investigating Officers

In this vague argument, Huff claims his attorney should have investigated "exactly what was communicated to and from investigating officers working with Agent Covell while he was on surveillance on Pauger Street."  (Petition, p. 26)  It is not precisely clear what Huff believes the result would be, other than possible support for his contention that he carried a gray jacket instead of a gray bag containing illegal narcotics.  Given Covell's testimony at trial, however, it is extremely unlikely that he would have recanted such testimony and suddenly recalled a gray jacket instead of the gray bag which was ultimately found  in the Lincoln.  Thus, even if defense counsel requested and sought interviews with such witnesses, who surely were not bound to provide an interview, it is highly unlikely that a positive, outcome-changing result would have occurred.

Huff also argues that his attorney should have interviewed the officer who took the photographs of the narcotics in the vehicle, and to determine which officer told the photographing officer about the discovery of drugs behind the air bag cover.  Speculating that such an investigation might have provided "favorable impeachment evidence" about how the air bag cover came off, Huff provides no idea or argument how this would have revealed anything that would have possibly changed the outcome of the trial.  Even if different explanations of how the air bag cover came to be removed were offered, such discrepancies would not in any way change the fact that Huff was seen carrying the gray bag to the Lincoln, the very same gray bag that was later found inside the Lincoln's air bag compartment containing a large amount of drugs.   Assuming that the

15

photographing officer would have cooperated with a pre-trial interview, Huff makes no valid argument as to how any such information would have changed the outcome of the trial, and thus has not demonstrated deficient performance or prejudice by his attorney.

### 9.     Photographs and Chain of Custody of Narcotics

Huff claims that photographs taken of the narcotics were "suspicious," but fails to state why, and fails to set forth what type of investigation would have revealed why his suspicion was well founded.   As to the chain of custody, Huff fails to note that he stipulated to the quantity and character of the drugs found in the Lincoln.   (Rec. Doc. No. 73, p. 115)   Huff fails to state what defects there were in the chain of custody such that such a stipulation was incorrect and ill-considered.   As entering in such a stipulation is not only common but desired by counsel and the Court, Huff would have to demonstrate a defect in the chain of custody in order to prevail in this argument.   He has not done so.   Therefore, his counsel properly entered into such a stipulation on his behalf.   Moreover, even if the chain of custody was demonstrated at trial, and some shortcomings were illustrated by defense counsel, such evidence would only go to the weight, and not necessarily the admissibility of the narcotics.   See *U.S. v. Johnson,* 68 F.3d 899 (5th Cir. 1995); *U.S. v. Crawford,* 52 F.3d 1303 (5th Cir. 1995).   This argument lacks merit.

### 10.     Suppression of the Video Tape

Huff again claims that the chain of custody for the video tape was not attacked, and thus it should have been suppressed.   Huff also contends that the transcript of the video tape was unreliable, and the video tape was not provided on a timely basis.   These arguments lack merit.   Huff's argument as to the "chain of custody" suffers from the same weaknesses as set forth herein above

with regard to the narcotics.  As to the untimeliness, the record reveals that a motion to continue the trial was afforded the defendant such that he had an adequate opportunity to review the video tape and the transcript.  At this juncture, Huff fails to demonstrate that either the video tape or the transcript was untrustworthy or in any way inauthentic.  Thus, any objection to the admission of the video tape would have been useless, and counsel cannot be deemed ineffective for failing to lodge such a frivolous objection.

### 11.    "Catch-All Arguments" and "Cumulative Error"

Huff makes several arguments that appear to be based upon the general notion that his attorney was ineffective, and thus relief is warranted.  For instance, aside from the "cumulative errors" of his attorney, Huff claims that counsel should have moved for a new trial based on many of the arguments he now makes as discussed herein above, and that counsel failed to argue evidence both at trial and at sentencing.  Because there was no deficient performance or prejudice on each of the individual claims Huff asserts herein, there cannot possibly be a cumulative error sufficient to warrant relief.  *U.S. v. Floyd,* 343 F.3d 363, 371, n. 6 (5th Cir. 2003).

### 12.    Duffaut's Confession

Huff claims that his co-defendant, Duffaut, confessed by way of coercion, a claim which the district court rejected.  (Rec. Doc. No. 18)  Huff believes his attorney should have nonetheless objected to Duffaut's statement as a product of alleged coercion, even though Duffaut made no such argument.  In his petition, however, Huff has offered no evidence to support his allegation of coercion, and thus cannot establish that his attorney was deficient for failing to object or move to suppress the confession.

17

Similarly, Huff claims his attorney was ineffective for failing to object to the redacted confession of Duffaut, resulting in a *Bruton* violation.  *See Bruton v. U.S.*, 391 U.S. 123 (1968).  Of course, Duffaut's confession was redacted for the very purpose of eliminating references to Huff, in satisfaction of *Bruton,* 391 U.S. at 126.  Therefore, his counsel had no basis to object to Duffaut's confession.

### 13.    Sentencing Issues

Huff makes several arguments in an attempt to demonstrate ineffective assistance of counsel at sentencing.  He claims insufficient evidence to support a two level adjustment for his supervisory role in the offense, and the inclusion of a criminal history point based on a prior guilty plea to possession of stolen property under $100.00.  Although Huff's argument regarding his supervisory role was not argued on appeal, the substantial evidence in the record, including the overwhelming evidence at trial, clearly demonstrated Huff's role in the offense.  The undersigned can find no error in the assessment of two levels for supervisory actions taken by Huff.  Huff's counsel did object to the addition of the criminal history point (see Huff's objection to pre-sentence report, objection no. 11, pp. 3-4), and thus his counsel's deficiency in this regard is entirely without merit.

Huff also complains that his attorney failed to object to a sentence enhancement under § 851, which is incorrect.  See Rec. Doc. No. 71.  Moreover, the Fifth Circuit noted the irrelevance of the 1991 conviction on Huff's sentence.  *Duffaut,* 314 F.3d at 210.

### 14.    Failure to Call Defendant Huff to the Witness Stand

Huff contends that, if he had been called as a witness, his contradictions of Agent Covell's assertions might have changed the outcome of the trial.  The *Strickland* standard requires that Huff

18

must overcome a strong presumption that his attorney's strategic decision not to place him on the stand and subject him to cross examination was sound trial strategy.  Assuming that his testimony, balanced against Agent Covell's, would have resulted in merely a "swearing contest," Huff cannot demonstrate ineffective assistance of counsel.  See, e.g., *U.S. v. Willis,* 273 F.3d 592 (5th Cir. 2001); *Rega v. United States,* 263 F.3d 18 (2nd Cir. 2001).  Huff does not indicate that his testimony would have proven decisively true (and thus over Agent Covell's obviously false), and he also fails to account for the other eyewitness testimony supporting Agent Covell's testimony.  Huff also does not indicate his insistence on testifying over and above his counsel's advice; rather, he acquiesced in counsel's strategic trial decision, a decision which is common practice in the field of criminal defense.  Huff has failed to demonstrate ineffective assistance by counsel's decision not to place him on the stand and subject him to cross examination.

### 15.    The Appeal

Huff also contends that his appellate counsel was ineffective in handling his appeal, though he fails to indicate what possible arguments could have been made on appeal that were not.  Thus, this argument fails.  See *Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir. 1989).

### CONCLUSION

Though Huff offers a myriad of arguments, replaying various aspects of his trial, he has failed to demonstrate that his attorney (1) did anything which fell below the *Strickland* standard, (2) committed any error which enhanced or even allowed the government to meet its burden of proving Huff's guilt beyond a reasonable doubt, or (3) acted in such a manner that specific changes would have resulted in a different outcome of either the trial or the prescribed sentence.  In fact, many of

Huff's arguments herein have already been considered by the Fifth Circuit on direct appeal, and have been found to be without merit.  Accordingly, Huff's request for relief is hereby **DENIED**, and he is not entitled to relief pursuant to 28 U.S.C. § 2255.  Moreover, to the extent Huff seeks further discovery or an evidentiary hearing on these claims, such request is **DENIED**.

New Orleans, Louisiana, this <u>15th</u> day of <u>March</u>, 2007.

**KURT D. ENGELHARDT**
**United States District Judge**

20